IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| WESTERN WATERSHEDS ) <br> PROJECT, and ) <br> COMMITTEE FOR IDAHO'S ) <br> HIGH DESERT, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> ) <br> WILLIAM WOOD, et al., ) <br> ) <br> ) <br> Defendants. ) <br> _____) | Civ. No. 01-0259-E-BLW <br><br> MEMORANDUM DECISION |

## INTRODUCTION

The Court has before it a single issue for resolution, posed by counsel in a Stipulation: Whether *Western Watersheds Project v. Matejko*, 468 F.3d 1099 (9th Cir. 2006) precludes WWP from pursuing its claim that "[c]ertain of the BLM test case diversions do not qualify as vested rights-of-way under the 1866 Act, because they post-date the 1901 Act and hence require BLM permits under the 1901 Act and/or FLPMA, for which BLM must undertake ESA consultation." *See Second Case Management Stipulation (docket no. 107) Id* at ¶ 6. For the reasons

**Memorandum Decision & Order – page 1**

expressed below, the Court holds that *Matejko* precludes WWP from pursuing its claim that ESA consultation must be undertaken for diversions governed by the 1901 Act.

## LITIGATION BACKGROUND

Western Watersheds Project and the Committee for Idaho's High Desert (collectively WWP), filed this action against the BLM and Forest Service, seeking declaratory and injunctive relief regarding hundreds of river and stream diversions on public lands in the Upper Salmon River basin of central Idaho.  WWP claims that the diversions harm fish listed under the Endangered Species Act (ESA). According to WWP's complaint, the agencies have failed to initiate the consultation required by § 7 of the ESA, and are engaged in a prohibited "take" of the fish under § 9 of the ESA.

After the State of Idaho intervened, and the Forest Service claims were settled, the parties agreed to litigate a set of six "test-case" diversions and focus on the legal issue of whether the BLM has a duty to consult under section 7(a)(2) of the Endangered Species Act (ESA).  In each test case, according to WWP, a private party diverted water on BLM land, and the BLM took no action to protect fish.

The test cases consist of two diversions on Big Timber Creek, three on the Pahsimeroi River, and one on Mahogany Creek.  There is a dispute over the legal

**Memorandum Decision & Order – page 2**

authority for the diversions. The BLM argues that each diversion was authorized by the Mining Act of 1866, which recognized diversions as valid rights-of-way without requiring the private party to submit any application or obtain any agency approval. Congress later started demanding more, and the Act of 1891 required applicants to file a map and show that a water right had been, or would be, granted. Finally, the Act of 1901 authorized the Department of Interior to require applicants to apply for a permit that would be granted on a finding that the right-of-way was in the public interest. WWP argues that some of the test case diversions were authorized under the Act of 1901, a point disputed by the BLM and Idaho.

To resolve the issues raised by the six test cases, the parties filed cross-motions for partial summary judgment. The BLM argued that the ESA duty to consult was only triggered by some affirmative agency action, and that the BLM had taken no action here. The Court disagreed, finding that a decision by an agency not to exercise its discretion constituted the necessary "action" that triggered an ESA duty to consult. *See Memorandum Decision (docket no. 69)*.

On appeal, the Ninth Circuit reversed. *See Western Watersheds Project v. Matejko*, 468 F.3d 1099 (9th Cir. 2006). The Circuit began its analysis with the language of section 7(a)(2), which refers to "agency action" as "any action authorized, funded, or carried out by such agency." The Circuit observed that "[o]f

**Memorandum Decision & Order – page 3**

particular significance is the affirmative nature of these words – 'authorized, funded, carried' – and the absence of a 'failure to act' from this list.  This stands in marked contrast to other sections of the ESA, which explicitly refer to an agency's failure to act." *Id*. at 1107-08.  Citing cases holding that "section 7(a)(2) consultation stems from 'affirmative' actions only," *id.* at 1108, the Circuit found no affirmative action here because "the BLM did not fund the diversions, it did not issue permits, it did not grant contracts, it did not build dams, nor did it divert streams."  *Id.* at 1109.

Following the appeal, the parties entered into a stipulation that narrowed the remaining issues. *See Second Case Management Stipulation (docket no. 107).*  In that stipulation, the parties agreed to (1) dismiss some claims, (2) attempt to settle others, and (3) present a single claim to the Court for resolution:  Whether *Matejko* precludes WWP from pursuing its claim that "[c]ertain of the BLM test case diversions do not qualify as vested rights-of-way under the 1866 Act, because they post-date the 1901 Act and hence require BLM permits under the 1901 Act and/or FLPMA, for which BLM must undertake ESA consultation." *Id* at ¶ 6.  This is the sole remaining claim by WWP.

WWP argues that *Matejko* did not address whether any of the six test case diversions were authorized under the 1901 Act, but instead proceeded under the

**Memorandum Decision & Order – page 4**

assumption that the diversions were all authorized by earlier Acts. This makes a significant difference, WWP argues, because the 1901 Act was the first to require permits, and the issuance of a permit would clearly be agency "action" under the ESA, triggering the consultation duty. Thus, WWP argues that it is not barred by *Matejko* from pursuing its claim that some diversions come under the 1901 Act, and that the BLM is required under that Act to issue permits and consult under § 7(a)(2) of the ESA.

WWP is not seeking now a ruling on whether any specific diversion is governed by the 1901 Act; rather, WWP seeks another round of briefing to address that issue. It merely asks now for a ruling that *Matejko* does not bar it from pursuing an inquiry into whether certain diversions are authorized under the 1901 Act.

## ANALYSIS

*Matejko* was based on two independent grounds. First, the decision held that "inaction is not 'action' for section 7(a)(2) purposes." *Matejko*, 468 F.3d at 1108. The BLM never took the affirmative action required by the ESA such as "issu[ing]permits." *Matejko*, 468 F.3d at 1110.

The second ground for the decision was that various BLM regulations and internal memoranda showed that the BLM had not retained discretion to order

**Memorandum Decision & Order – page 5**

modifications to diversions under the 1866 Act for the protection of fish. *Id*. at 1110. Where there is no agency discretion to act, consultation would be a meaningless exercise, and the ESA does not apply. *Id*.

Stated simply, *Matejko* held that the BLM had no duty to consult under the ESA because (1) it had taken no action, and (2) it did not retain the discretion to act. These holdings, WWP argues, do not apply to any diversion governed by the 1901 Act. Under that Act, WWP argues, the BLM engages in "action" when it issues the required permits, and has retained discretion to enforce terms and conditions of the permit, which could include protections for fish. *See WWP Reply Brief* at p. 10.

However, even if WWP is correct that certain diversions are governed by the 1901 Act, and that the BLM retained discretion under that Act to include protections for fish in the terms of permits issued under that Act, the fact remains that the BLM has taken no action to issue the permits. *Matejko* requires affirmative action such as "issu[ing]permits" before the duty to consult arises under the ESA. *Matejko*, 468 F.3d at 1110. Because inaction cannot constitute action under the ESA, the BLM's failure to issue permits under the 1901 Act cannot trigger the ESA's consultation requirement under § 7(a)(2). *Id*. at 1108.

An agency's failure to issue permits required by law could be remedied by a

**Memorandum Decision & Order – page 6**

lawsuit under § 706(1) of the Administrative Procedures Act (APA) that authorizes a court "to compel agency action unlawfully withheld." *See* 5 U.S.C. § 706(1). While WWP's complaint does allege that the BLM has authority to protect fish under unspecified statutes other than the 1866 Act, *see First Amended Complaint* at ¶ 68, the complaint does not allege that the BLM is wrongfully failing to require permits for diversions governed by the 1910 Act, and does not seek to compel – under § 706(1) – the BLM to issue permits protecting fish under the 1901 Act. Indeed, *Matejko* held that "[t]his is not a lawsuit to 'compel agency action' under § 706(1) of the APA." *Matejko*, 468 F.3d at 1110.

To specifically answer the question posed by counsel in their Stipulation, the Court finds that *Matejko* precludes WWP from pursuing its claim that "[c]ertain of the BLM test case diversions do not qualify as vested rights-of-way under the 1866 Act, because they post-date the 1901 Act and hence require BLM permits under the 1901 Act and/or FLPMA, for which BLM must undertake ESA consultation." *See Second Case Management Stipulation (docket no. 107)* at ¶ 6.

As that is the last remaining issue in the case, the Court will issue a separate Judgment as required by Rule 58.

**Memorandum Decision & Order – page 7**



DATED: **March 31, 2010**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision & Order – page 8**